[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 15, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15163
Non-Argument Calendar

_____

D. C. Docket No. 04-60192-CR-MGC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDWARD MELVIN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 15, 2007)

Before TJOFLAT,  BIRCH and HULL, Circuit Judges.

PER CURIAM:

This appeal is the third time this case has been before us. Edward Melvin appeals his 100-month sentence imposed on remand for distribution and possession with intent to distribute cocaine base within 1,000 feet of a playground. At the most recent resentencing hearing, the district court neither violated Melvin's constitutional right to confrontation by admitting lab reports, nor afforded dispositive weight to the sentencing guidelines. Accordingly, for the reasons set out below, we AFFIRM.

## I. BACKGROUND

A federal grand jury indicted Melvin on three counts of distribution and possession with intent to distribute cocaine base within 1,000 feet of a playground, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 860. Melvin pled guilty to all three counts.

According to the presentence investigation report ("PSI"), the Hallandale Beach Police Department, in conjunction with the Drug Enforcement Agency ("DEA"), executed three controlled purchases of cocaine base from Melvin. The probation officer assigned Melvin a base offense level of 28, pursuant to U.S.S.G. § 2D1.2(a)(1), because the offense involved more than 5 grams, but less than 20 grams, of cocaine base within a protected location. Melvin received a three-level reduction, pursuant to U.S.S.G. §§ 3E1.1(a) and (b), because he accepted

2

responsibility and pled guilty in a timely manner. Accordingly, Melvin's total offense level was 25. Melvin's criminal history category was V. Based on the total offense level of 25 and the criminal history category of V, Melvin's recommended sentencing range was 100 to 125 months of imprisonment.

Melvin raised several objections to the PSI, including that he had not pled guilty to, nor had the indictment alleged, a specific drug quantity as reported in the PSI. The district court overruled Melvin's objections and sentenced him to 100 months of imprisonment. Melvin appealed his sentence, and we held that: (1) the district court constitutionally erred by enhancing Melvin's sentence, under a mandatory guidelines scheme, based on facts neither included in the indictment nor admitted by him; (2) the district court's treatment of the guidelines as mandatory constituted statutory error; and (3) because it was unclear what sentence the district court would have imposed under an advisory system, the government failed to meet its burden of showing that the error was harmless. Accordingly, we vacated and remanded Melvin's sentence "for resentencing under an advisory guidelines scheme." United States v. Melvin, 152 Fed. App'x 792, 795 (11th Cir. 2005).

At resentencing, Melvin reiterated his contention that his base offense level should be 12, the lowest offense level for an offense involving cocaine base, because the drug quantity proffered by the government was neither admitted to by

3

Melvin nor proven to a jury. The government responded that the district court could determine the drug quantity by a preponderance of the evidence under an advisory guidelines scheme. Melvin argued that lab reports would be insufficient to establish the drug quantity because he would object to the amount. He also reminded the district court that it had indicated at the initial sentencing hearing that Melvin's guideline range was too high. The district court then stated:

> I believe last summer, at least for me, we were all trying to navigate the kind of rough waters of Booker, Blakely, and Reese. I believe, and there are certain of these resentences that I have done and the sentences remain the same. But in this case I believe there are some adjustments that need to be made given the way that the indictment in this case was written.

R4 at 7. The district court then concluded that the base offense level was 12, the criminal history category was V, and the resulting guidelines range was 27 to 33 months of imprisonment. Prior to imposing the sentence, the district court noted that "this defendant deserves an incarcerated sentence. With a criminal history of five, he hasn't learned his lesson. . . . your client is no babe in the woods, Mr. Lautenbach." Id. at 8. The district court sentenced Melvin to 33 months of imprisonment. The government appealed Melvin's sentence.

We vacated and remanded for resentencing. We held that the district court erred when it concluded that "it could not calculate the guideline range by using a drug quantity neither included in the indictment nor admitted to by Melvin."

4

United States v. Melvin, 190 Fed. App'x 865, 869 (11th Cir. 2006). We held that the district court had an obligation "to determine the drug quantity under a preponderance of the evidence standard." Id.

At the third sentencing hearing, the district court began by explicitly referring to the guidelines as advisory. The government offered four DEA lab reports that indicated that Melvin's drug transactions involved a total of 5.63 grams of cocaine base. Relying on United States v. Frazier, 26 F.3d 110 (11th Cir. 1994), Melvin objected to the lab reports. He argued that hearsay was not automatically admissible in a sentencing hearing without a court-conducted balancing test to determine the government's reason for not presenting a witness.

The government called Carlos Diaz, a DEA forensic chemist. Diaz explained his credentials and the process used by the DEA to weigh controlled substances. He personally conducted two of the lab reports before the district court. He described the testing procedures, and he testified that the amounts documented in the reports were accurate. In addition, he testified as to the conclusions reached in the two lab reports that he did not personally perform. Melvin again objected, and the district court overruled the hearsay objections. On cross-examination, Diaz acknowledged that he had not personally conducted, nor

observed, two of the tests. He reviewed those lab reports, and he stated that the correct procedures were followed.

Melvin argued that the lab reports not conducted by Diaz should not be considered because the district court had failed to follow Frazier, resulting in the admission of hearsay and the violation of his due process rights. He asserted that the district court should only take into account 1.7 grams, which is what the government was able to prove. The government contended that: (1) it had to prove the drug quantity by a preponderance of the evidence, and hearsay was admissible in sentencing proceedings; and, (2) Diaz adequately explained the DEA's standard procedures. Melvin argued that the analyst who performed the contested tests was available, and he should have been presented to the district court.

The district court opined that it could use lab reports if it found the reports reliable. Accordingly, the district court found that the government had proven by a preponderance of the evidence that Melvin was accountable for 5.63 grams of cocaine base. Melvin's total offense level was 25, his criminal history category was V, and his sentencing range was 100 to 125 months of imprisonment. The district court began to impose its sentence, stating, "[h]aving re-reviewed the pre-sentence report, as well as the factors in 3553(c),"[1] when Melvin requested an

---

[1] The factors to be reviewed in imposing a sentence are found at 18 U.S.C. § 3553(a). The most plausible explanation is that the district court accidentally cited § 3553(c), as it did reference

6

opportunity to inform the court of some additional facts. R5 at 29. He claimed to have "turned over the proverbial new leaf," citing his clean disciplinary record in prison and his successful completion of numerous "programs." Id. at 29-30. Melvin personally addressed the district court, stating that he had "been walking with God" and was a changed man. Id. at 31. The district court sentenced him to 100 months of imprisonment and a supervised release term of 6 years. Melvin reiterated his due process objections.

## II. DISCUSSION

On appeal, Melvin argues that the 67-month increase in his sentence indicates that the district court placed "undue weight" on the guidelines, thereby violating United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005). During the first resentencing hearing, the district court stated that Melvin "deserved" a 33-month sentence, R4 at 8, and, thus, Melvin contends that the only explanation for the increased prison term is that the court believed it had to impose a sentence within the guidelines range. He asserts that the guidelines were given "dispositive weight" and had a "dispositive effect" on his sentence in violation of Booker. Appellant's Br. at 5.

---

reviewing "the factors." See R5 at 29.

7

"[A] sentence may be reviewed for procedural or substantive unreasonableness." United States v. Hunt, 459 F.3d 1180, 1182 n.3 (11th Cir. 2006). "A sentence may be unreasonable if it is the product of a procedure that does not follow Booker's requirements, regardless of the actual sentence." Id. Normally, we review such legal issues concerning the guidelines de novo. Id. at 1183 (citation omitted). Where the Booker objection is not raised before the district court, however, we review for plain error. United States v. Shelton, 400 F.3d 1325, 1328 (11th Cir. 2005) (citation omitted). "An appellate court may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights." Id. at 1328-29 (citation and internal quotation omitted). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 1329 (citation and internal quotation omitted).

In Booker, the Supreme Court (1) held that sentence enhancements based solely on judicial fact-finding pursuant to the mandatory Federal Sentencing Guidelines violated the Sixth Amendment, and (2) excised the provisions of the Sentencing Reform Act that made the guidelines mandatory - 18 U.S.C. §§ 3553(b)(1) and 3742(e) - thereby effectively rendering the Sentencing

8

Guidelines advisory only. 543 U.S. at 232-35, 258-59, 125 S.Ct. at 749-51, 764. We have explained that there are two types of Booker error: (1) Sixth Amendment error based upon sentencing enhancements under a binding guidelines system; and (2) error based upon sentencing under a mandatory guidelines system. Shelton, 400 F.3d at 1329-31.

"[A] district court may determine, on a case-by-case basis, the weight to give the Guidelines, so long as that determination is made with reference to the remaining section 3553(a) factors that the court must also consider in calculating the defendant's sentence." Hunt, 459 F.3d at 1185. "[N]othing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005). We have further noted that a district court's explicit acknowledgment that it had considered the defendant's arguments and the factors set out in § 3553(a) would alone be sufficient. Id. at 1330. In determining if the district court has adequately considered the defendant's arguments and the § 3553(a) factors, we can look to the district court's statements over the entire sentencing hearing. See United States v. Williams, 435 F.3d 1350, 1355 (11th Cir. 2006) (per curiam).

Here, whether reviewing under a plain error or de novo standard of review, the district court's imposition of sentence was not procedurally unreasonable. Melvin's appeal is predicated upon his argument that the 67-month difference in his sentence between the first resentencing hearing and the second resentencing hearing can only be explained by the district court giving undue or dispositive weight to the guidelines. The district court, however, stated that it considered the § 3553 factors, and it granted Melvin the opportunity to present evidence on why he should receive a sentence below the guidelines range. See Hunt, 459 F.3d at 1185. In addition, the district court began the second resentencing hearing by explicitly referring to the guidelines as advisory. Melvin's argument regarding the district court's remark that he "deserved" a 33-month sentence is misleading. The district court observed that he deserved an incarcerated sentence, and its 33-month sentence was imposed under an improperly calculated guidelines range. The district court's sentence was not procedurally unreasonable as the court clearly understood it was sentencing under an advisory guidelines scheme and it considered the § 3553 factors. See Scott, 426 F.3d at 1330. Melvin offers no argument as to the substantive reasonableness of the 100-month sentence. Accordingly, there was no procedural error in the district court's imposition of sentence, and it did not treat the guidelines as dispositive or mandatory.

10

Melvin argues that the district court erred in relying on lab reports to establish the drug quantity attributable to him. Melvin argues that the district court's decision to credit two reports without hearing testimony from the lab analyst who prepared the reports deprived him of his right to confront the analyst. He contends that the government could not satisfy a preponderance of the evidence standard because the reports were not authenticated or corroborated. He argues that the technician's absence deprived him of his right to confrontation.

We review constitutional challenges to a sentence de novo. United States v. Cantellano, 430 F.3d 1142, 1144 (11th Cir. 2005) (per curiam) (citation omitted), cert. denied, 126 S.Ct. 1604 (2006). "[R]eliable hearsay can be considered during sentencing." United States v. Zlatogur, 271 F.3d 1025, 1031 (11th Cir. 2001) (per curiam) (citations omitted). The district court can rely on such evidence "as long as the evidence has sufficient indicia of reliability, the court makes explicit findings of fact as to credibility, and the defendant has an opportunity to rebut the evidence." Id. (citation and internal quotation omitted). In addition, we have noted that the Supreme's Court's holding in Crawford v. Washington, 541 U.S. 36, 68, 124 S.Ct. 1354, 1374 (2004) (holding that testimonial hearsay cannot be introduced at trial unless the declarant was unavailable and the defendant has had a prior opportunity to cross-examine the declarant), did not address the use of

11

hearsay during sentencing proceedings, meaning that courts could still base sentencing determinations on reliable hearsay. United States v. Baker, 432 F.3d 1190, 1254 n.68 (11th Cir. 2005), cert. petition filed, No. 06-11248 (Aug. 24, 2006). The right to confrontation is a trial right and not a sentencing right. Cantellano, 430 F.3d at 1146.

In Frazier, we held that minimal due process requirements, such as the right to confront adverse witnesses, are applicable to revocation proceedings. 26 F.3d at 114. In the context of supervised release revocation proceedings, district courts must "balance the defendant's right to confront adverse witnesses against the grounds asserted by the government for denying confrontation." Id. (citations omitted). If the district court admits hearsay, then it must be reliable. Id. (citation omitted).

Melvin's argument is precluded by our precedent. He frames the argument as a violation of his confrontation rights, claiming that the district court failed to balance his confrontation rights with the reasons that the government denied confrontation. We have specifically held, however, that the right to confrontation is not a sentencing right. Castellano, 430 F.3d at 1146. His reliance upon Frazier for the argument that his confrontation rights were violated is misplaced because that case dealt with revocation proceedings. It is worth noting, even though

12

Melvin does not appeal on these grounds, that the district court credited Diaz's testimony regarding the lab reports and allowed Melvin to challenge the reports. Thus, a hearsay challenge fails as well. See Zlatogur, 271 F.3d at 1031.

### III.  CONCLUSION

Melvin challenges his sentence upon two grounds:  (1) the sentencing court afforded the guidelines too much weight in violation of Booker; and, (2) the sentencing court erred in relying upon certain laboratory reports to establish doing quantity.   For the reasons set out above we find no reversible error.   Accordingly, we **AFFIRM.**