[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-11671

_____

D.C. Docket No. 04-00152-CR-WS

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 10, 2006
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JERMAINE HUNT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(August 10, 2006)

Before TJOFLAT and COX, Circuit Judges, and GEORGE,[*] District Judge.

TJOFLAT, Circuit Judge:

_____

[*] Honorable Lloyd D. George, United States District Judge for the District of Nevada, sitting by designation.

I.

On June 27, 2004, Fairhope police officers, while responding to a domestic disturbance call, arrested Jermaine Hunt, and found 22 grams of crack cocaine ("crack") in his pocket. Hunt was subsequently indicted for possession with intent to distribute 22 grams of crack, in violation of 21 U.S.C. § 841(a)(1). After the Government filed a notice stating its intention to seek an enhanced penalty under 21 U.S.C. § 841(b)(1)(B), based on a prior state conviction for unlawful distribution of a controlled substance, Hunt pled guilty to the facts of the indictment without a plea agreement. The presentence investigation report ("PSI") held the defendant accountable for 248.06 grams of crack and 0.5 grams of powder cocaine – quantities based on drugs found on Hunt's person and post-arrest statements made to authorities. At the sentencing hearing, which occurred after the Supreme Court's decision in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), the court heard the testimony of a DEA Task Force agent and one of Hunt's accomplices testifying pursuant to a plea agreement, and ultimately adopted the findings of the PSI. Based on an adjusted base offense level of 31 and a criminal history category of III, the Guidelines suggested a sentencing range of 135-144 months. The district court sentenced the defendant to

135 months imprisonment followed by eight years of supervised release. Hunt appeals, claiming that the district court gave too much weight to the Guidelines in violation of the remedial provisions of Booker.[1]

II.

A.

In United States v. Booker, the Supreme Court held that in a mandatory sentencing guidelines regime, the Sixth Amendment requires that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 543 U.S. at 244, 125 S. Ct. at 756. The Court was careful to explain that the relevant sentencing range for Sixth Amendment purposes shifts from the statute to the guidelines, only where the guidelines are mandatory. See id. at 233,

---

[1] Hunt also claims that application to him of the remedial decision in Booker is unconstitutionally retroactive to the extent it operates to his disadvantage. His argument runs as follows: At the time of his unlawful conduct (pre-Booker, post-Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004)), Hunt could only reasonably have expected to be sentenced under a mandatory sentencing regime based solely on facts conceded by him or found by a jury beyond a reasonable doubt – a system that, in fact, has never existed. Therefore, any application of Booker that would lengthen his sentence beyond that dictated by such a scheme would violate the Due Process Clause of the Fifth Amendment. Hunt is not the first to make this argument. Thus, as he concedes, United States v. Duncan, 400 F.3d 1297, 1306-08 (11th Cir. 2005), requires us to reject this claim. See, e.g., United States v. Machado, 804 F.2d 1537, 1543 (11th Cir. 1986) ("Only a decision by this court sitting en banc or by the United States Supreme Court can overrule a prior panel decision.").

125 S. Ct. at 750 (noting that "[i]f the [Federal Sentencing] Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment."). Because the Federal Sentencing Guidelines were mandatory and allowed for judicial findings of fact that increased a defendant's sentence, the Guidelines violated this requirement. See id. at 232-34, 125 S. Ct. at 749-50.

A different majority of the Court remedied the constitutional infirmity by excising the provisions of the Sentencing Reform Act making the Guidelines mandatory – namely 18 U.S.C. § 3553(b)(1) (requiring courts to impose a sentence within the specified range unless specified criteria were met) and § 3742(e) (providing for appellate review of sentencing). See Booker, 543 U.S. at 259-260, 125 S. Ct. at 764-65. The upshot of the Court's handiwork is that the Guidelines remain in place in an advisory capacity and must be "consider[ed]" along with the other sentencing goals laid out in 18 U.S.C. § 3553(a). Id.[2] The court may still

---

[2] 18 U.S.C. § 3553(a) provides, in relevant part:
Factors to be considered in imposing a sentence.– The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider–
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed–

make findings of fact (so long as the judicial factfinding does not increase the defendant's sentence beyond the statutory maximum triggered by the facts conceded or found by a jury beyond a reasonable doubt), and the sentence is subject to appellate review for "reasonableness." Id. at 262, 125 S. Ct. at 766. The issue before us is what it means to "consider" the Guidelines.[3]

### B.

At the sentencing hearing, Hunt argued for a more lenient sentence than that prescribed by the Guidelines based on his dissatisfaction with the now infamous 100-to-1 powder-to-crack ratio. See 21 U.S.C. § 841(b)(1)(B)(ii), (iii); USSG § 2D1.1. According to Hunt, it no longer makes sense, particularly in an advisory

---

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established . . .;
(5) any pertinent [Sentencing Commission] policy statement . . .;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

[3] After Booker, a sentence may be reviewed for procedural or substantive unreasonableness. A sentence may be unreasonable if it is the product of a procedure that does not follow Booker's requirements, regardless of the actual sentence. Additionally, a sentence may be substantively unreasonable, regardless of the procedure used. Hunt here only challenges the sentencing procedure used by the district court. He does not claim that the sentence itself is unreasonable.

5

guidelines regime, to make use of crack guidelines given that the Sentencing

Commission itself has repeatedly advised that the current ratio is too large and

cannot be justified by Congress's expressed sentencing goals.  See, e.g., United

States Sentencing Commission, Report to the Congress: Cocaine and Federal

Sentencing Policy (May 2002) (available at

http://www.ussc.gov/r_congress/02crack/2002crackrpt.htm).  The district court

declined Hunt's request to depart from the Guidelines' recommended sentence

range.

In so doing, the court articulated its interpretation of its new Booker-given

obligation to "consider" the Guidelines as follows:

> [I]n the wake of Booker, . . . it has been my position that the
> Sentencing Guidelines are to be given substantial weight and that I'm
> also to consider not only the Sentencing Guidelines but the Section
> 3553(a) factors as well . . . .
> And so given what I understand to be the gist of Booker, . . . it .
> . . has been my practice . . . to follow the Sentencing Guidelines
> unless I am shown that there's some good reason not to.
> And to that extent, I have found that the Sentencing Guidelines
> typically will afford me the opportunity to fashion a reasonable
> sentence in most cases.

Record, vol. 4, at 6-7.  The court later concluded:

> [H]aving considered the applicable Congressional mandates in the
> Sentencing Reform Act, including the Sentencing Guidelines and
> provisions of Section 3553(a), . . . the Court finds that it should give
> considerable weight to the Guidelines in this case, and I find no

6

substantial reason to depart from those Guidelines or to impose a non-guideline sentence in this particular case.

Id. at 45.

According to Hunt, the court's reference to "substantial" and "considerable weight" indicates an excessive reliance on the Guidelines – one that is inconsistent with the role the Guidelines should play in a post-Booker sentencing regime. Hunt suggests that absent this unwarranted deference the court would have been less likely to conclude that the Guidelines range for crack offenses adequately promotes the section 3553(a) factors. As such, Hunt requests to be resentenced with instructions that the Guidelines are to be given no more weight than any of the other section 3553(a) purposes. We review this issue, as we do all pure legal questions concerning the Guidelines, de novo. United States v. Murrell, 368 F.3d 1283, 1285 (11th Cir. 2004).

C.

Much has been written about the amount of weight to accord the Guidelines in light of Booker, and virtually every position has been adopted by one court or another. Compare United States v. Jimenez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006) (en banc) ("[T]he guidelines cannot be called just 'another factor' in the statutory list, because they are the only integration of the multiple factors and,

with important exceptions, their calculations were based upon the actual sentences of many judges." (citations omitted)), with United States v. Williams, 436 F.3d 706, 708 (6th Cir. 2006) ("[T]his court has yet to articulate what weight should be accorded the Guidelines relative to the other sentencing factors listed in § 3553(a). We now join several sister circuits in crediting sentences properly calculated under the Guidelines with a rebuttable presumption of reasonableness." (citations omitted)), and United States v. Wilson, 355 F. Supp. 2d 1269, 1271 (D. Utah 2005) ("This court remains convinced that it should give great weight to the Sentencing Guidelines in determining the appropriate sentence, varying from the Guidelines only in rare cases."), with United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006) ("Even after Booker, deference to the Guidelines is essential 'to promote uniformity in sentencing so as to prevent vastly divergent sentences for offenders with similar criminal histories and offenses.'" (quoting United States v. Kristl, 437 F.3d 1050, 1054 (10th Cir. 2006) (internal quotation marks omitted))), with United States v. Zavala, 443 F.3d 1165, 1169 (9th Cir. 2006) ("If a district court presumed that the sentence should be a Guideline range sentence, it would thereby make it much more than something to be consulted and would give it much heavier weight than § 3553(a) now does."), and United States v. Jaber, 362 F. Supp. 2d 365, 371 (D. Mass. 2005) (suggesting that an approach giving

substantial weight to the Guidelines "comes perilously close to the mandatory regime found to be constitutionally infirm in Booker").

We do not believe that any across-the-board prescription regarding the appropriate deference to give the Guidelines is in order. Cf. Jimenez-Beltre, 440 F.3d at 518 ("We do not find it helpful to talk about the guidelines as 'presumptively' controlling or a guidelines sentence as 'per se reasonable' . . . ."). Booker restored to district courts a measure of discretion that the mandatory Guidelines had removed. This discretion is bounded, of course, by Congress's mandate to consider the factors in section 3553(a), one of which, subsection four, is the Sentencing Guidelines. There are many reasons a district court may choose to follow the Guidelines in a particular case – namely that the Guidelines are an accumulation of knowledge and experience and were promulgated over time by the Sentencing Commission, an agency instructed to consider the section 3553(a) factors. See United States v. Scott, 426 F.3d 1324, 1330 n.5 (11th Cir. 2005) ("Since its creation, the Sentencing Commission has adopted, modified, and honed the Guidelines to take account the factors in § 3553(a)."); United States v. Rattoballi, 452 F.3d 127, __, No. 05-1562, slip op. at 17-18 (2d Cir. June 21, 2006) ("It bears noting that the Sentencing Commission is an expert agency whose statutory charge mirrors the § 3553(a) factors that the district courts are required to

consider.").[4]  The Guidelines, moreover, are an indispensable tool in helping courts achieve Congress's mandate to consider "the need to avoid unwarranted sentence disparities" among similarly situated defendants.  18 U.S.C. § 3553(a)(6).

There are, however, many instances where the Guidelines range will not yield a reasonable sentence.  See Jimenez-Beltre, 440 F.3d at 518 ("Yet the guidelines are still generalizations that can point to outcomes that may appear unreasonable to sentencing judges in particular cases.  Some of the guidelines in particular cases were not reflections of existing practice but were deliberate deviations or turned tendencies into absolutes.  Others have been affected by directions from Congress.  Booker's remedial solution makes it possible for courts to impose non-guideline sentences that override the guidelines, subject only to the ultimate requirement of reasonableness." (citation omitted)).  If Booker is to mean anything, it must be that district courts are obligated to impose a reasonable sentence, regardless of the Guidelines range, so long as the Guidelines have been considered.  Thus, a district court's determination that the Guidelines range fashions a reasonable sentence, necessarily must be a case-by-case determination.

---

[4] In crafting the Guidelines, the Sentencing Commission was also instructed to consider specific factors relating to offense characteristics, 28 U.S.C. § 994(c), and offender characteristics, id. § 994(d), and instructed not to consider certain offender characteristics, id. § 994(e).

10

In some cases it may be appropriate to defer to the Guidelines; in others, not. So long as the district court considers the Guidelines, we do not believe it is appropriate to dictate a "strength" of consideration applicable in every case.

Nor do we find a presumption to be useful in this context. Presumptions are burden-shifting tools, see 31A C.J.S. Evidence § 130 (1996) ("A presumption is a rule for the guidance of trial judges in locating the burden of producing evidence at a particular time."), and operate effectively where the party against whom the presumption operates is better situated to come forward with evidence. To say that the Guidelines are "presumptively" reasonable is to charge the defendant with the responsibility of establishing that the Guidelines range does not fulfill the remaining section 3553(a) factors in a particular case. We agree that, in this context, there is some evidence the defendant is more likely to possess. See, e.g., 18 U.S.C. § 3553(a)(1) ("the history and characteristics of the defendant"); id. § 3553(a)(2)(C) ("the need for the sentence . . . to protect the public from further crimes of the defendant"). Other evidence, however, might better be asked of the Government – a repeat player in the criminal justice arena. See, e.g., id. § 3553(a)(2)(A) ("the need for the sentence . . . to reflect the seriousness of the offense [and] to promote respect for the law"); id. § 3553(a)(2)(B) ("the need for the sentence . . . to afford adequate deterrence to criminal conduct"); id. §

11

3553(a)(6) ("the need to avoid unwarranted sentence disparities"). We therefore

see no basis for ascribing a presumption one way or the other.[5] Rather, the

Guidelines are to serve as a starting point for consideration as to whether a given

sentence is "reasonable" in view of the entirety of section 3553(a). Whether, after

consideration of section 3553(a) in its entirety, a court finds the Guidelines to be

compelling is a fact-specific judgment that we neither mandate nor foreclose.

In sum, we hold that a district court may determine, on a case-by-case basis,

the weight to give the Guidelines, so long as that determination is made with

reference to the remaining section 3553(a) factors that the court must also consider

in calculating the defendant's sentence.

D.

In this case we acknowledge that the district court made some statements

that could be interpreted as presumptions in favor of the Guidelines. See, e.g.,

---

[5] Even if we thought a presumption might be useful, we note that the party who would
benefit from the presumption might depend on which aspect of the Guidelines matrix is being
challenged. Where a party argues that the court should disregard a Guidelines range because, in
that particular case, the criminal history category serves as a poor proxy for the defendant's
likelihood of recidivism, it might make sense to use a presumption in favor of reasonableness.
See United States v. Roman, 989 F.2d 1117, 1123-24 (11th Cir. 1993) (en banc) ("A prior
conviction is 'counted' in an offender's Criminal History Score only because it raises a
presumption of criminal conduct that may inform the court's determination of the offender's
likelihood of recidivism." (emphasis omitted)). Where a party challenges the Guidelines as
imposing an unreasonable sentence because the range somehow over- or undervalues the need
for punishment or general deterrence – propositions about which the Government is likely to
have more information – a presumption in the defendant's favor may be more sensible.

Record, vol 4., at 7 ("[I]t . . . has been my practice . . . to follow the Sentencing Guidelines unless I am shown that there's some good reason not to.").  Ultimately, however, the district court concluded that the Guidelines were worthy of deference in this particular case.  See id. at 45 ("[H]aving considered the applicable Congressional mandates in the Sentencing Reform Act, including the Sentencing Guidelines and provisions of Section 3553(a), . . . the Court finds that it should give considerable weight to the Guidelines in this case, and I find no substantial reason to depart from those Guidelines or to impose a non-guideline sentence in this particular case." (emphasis added)).  The court's decision to defer to the Guidelines was ultimately a case-specific one and was based on consideration of the section 3553(a) factors.  We find no fault in this approach.

Because Hunt claims only that his sentence was a product of an improper sentencing procedure, and not that it is per se unreasonable to abide by the crack/powder differential, we need not address whether the sentence is substantively reasonable.  Here the court expressly considered the section 3553(a) factors, see United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005) ("[A]n acknowledgment by the district court that it has considered the defendant's arguments and the factors in section 3553(a) is sufficient under Booker."), and ultimately decided to give considerable weight to the Guidelines in this case.  We

13

cannot say that the court ran afoul of <u>Booker</u>'s requirements.

## III.

For the foregoing reasons, Hunt's sentence is

AFFIRMED