[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 9, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-11096
Non-Argument Calendar

_____

D. C. Docket No. 06-00345-CR-T-17TGW

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WALTER CANPAZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(November 9, 2007)**

Before ANDERSON, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Appellant Walter Canpaz appeals the district court's sentence of 135 months imprisonment imposed following Canpaz's guilty plea for (1) possession with intent to distribute five kilograms or more of cocaine while aboard a vessel within United States jurisdiction and (2) conspiracy to possess with intent to distribute

five kilograms or more of cocaine while aboard a vessel within United States jurisdiction, both in violation of 46 U.S.C. app. § 1903.

## I. BACKGROUND

On August 5, 2006, the United States Coast Guard observed a "go-fast" speedboat without nationality markings located west of the Galapagos Islands in the Eastern Pacific. Coast Guard officers observed four men aboard the vessel don life jackets and jump into the water. The vessel was sinking and on fire. The Coast Guard then extinguished the fire and rescued the crew.

Upon inspection of the vessel, authorities discovered that the scuttling valve had been opened by the crew and found 733 kilograms of cocaine on the vessel. All four men were arrested and brought to the United States. After Canpaz pleaded guilty, the district court adopted the pre-sentence investigation report. It found the adjusted offense level was 33 and, because Canpaz did not have any prior convictions, the court sentenced him to 135 months imprisonment— the low end of the 135 to 168 month range.

## II. ANALYSIS

Canpaz appeals his sentence on two grounds. First, he argues that the district court erred by not granting a minor-role reduction for his participation in the overall criminal enterprise. Second, Canpaz contends that his sentence is unreasonable and that we cannot presume a sentence is reasonable simply because it fell within the sentencing Guidelines range. As the basis of his "unreasonable" argument, Canpaz asserts that the sentence reflects a sentencing disparity when

2

compared with sentences other defendants have received for committing the same offense. Further, he argues that his status as an alien subjects him to a harsher sentence than non-aliens would receive because of the customs and immigration detainer.

*a. The minor-role reduction*

Canpaz claims that he was entitled to a minor-role reduction because he was less culpable than the other participants, had no decision-making authority, and had no supervisory role. A district court's determination of a defendant's role in the offense is a finding of fact to be reviewed only for clear error. United States v. De Varon, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). This is a fact-intensive inquiry and, "[s]o long as the basis of the trial court's decision is supported by the record and does not involve a misapplication of a rule of law," we will rarely conclude that the district court's determination is clearly erroneous. Id. at 945. The district court need not make any specific findings other than the ultimate determination of the defendant's role in the offense. Id. at 940.

The Sentencing Guidelines provide for a downward adjustment of the offense level "for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2, comment. (n.3). A defendant who "is less culpable than most other participants, but whose role could not be described as minimal" is granted a two-level adjustment as a minor participant. Id., comment. (n.5). The defendant bears the burden of proving a mitigating role in the offense by a preponderance of

3

the evidence. De Varon, 175 F.3d at 939.

When determining a defendant's role in the offense, the district court must measure the defendant's role against the relevant conduct attributed to him. Id. at 940-41. "[W]here the relevant conduct attributed to a defendant is identical to [his] actual conduct, [he] cannot prove that [he] is entitled to a minor role adjustment simply by pointing to some broader criminal scheme in which [he] was a minor participant but for which [he] was not held accountable." Id. at 941. Similarly, the district court may measure the defendant's role against other participants who are identifiable from the evidence and who were involved in the relevant conduct attributed to the defendant. Id. at 944. In the drug courier context, the amount of drugs involved is a material consideration in the assessment of the defendant's role and, in some circumstances, may be a determinative factor. De Varon, 175 F.3d at 943.

Here, we conclude that the district court did not clearly err in denying the reduction. Canpaz was held responsible for only his own conduct, which included the possession of over 700 kilograms of cocaine. He has offered nothing to meet his burden to show he was entitled to a reduction. As the government notes, Canpaz did not argue before the district court that other defendants in the same jurisdiction have received lighter sentences, and he cannot now show plain error based on this information in light of the large amount of drugs for which he was held responsible. De Varon, 175 F.3d at 943.

Related to this minor-role argument, Canpaz also asserts that U.S.S.G. App.

C, Amendments 640 and 668, provide relief. Amendments 640 and 668 provide for a maximum offense level of 30, but these amendments only apply if the defendant received the role reduction. Here, because the role reduction did not apply, Amendments 640 and 668 were not applicable.

*b. Reasonableness*

Canpaz next argues that his sentence is unreasonable and that the court cannot presume a reasonable sentence simply because it fell within the sentencing Guidelines range. Canpaz contends that his sentence is unreasonable because it reflects a sentencing disparity when compared with sentences other defendants have received for committing the same offense. He also argues that his status as an alien subjects him to a harsher sentence because of the customs and immigration detainer. Accordingly, he claims a variance under § 3553(a) would cure the violation.

We review a defendant's sentence for reasonableness. Martin, 455 F.3d at 1237; United States v. Winingear, 422 F.3d 1241, 1244 (11th Cir. 2005); United States v. Crawford, 407 F.3d 1174, 1179 (11th Cir. 2005). Canpaz bears the burden of showing that his sentence is unreasonable. United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).

A sentence may be reviewed for procedural or substantive unreasonableness. A sentence may be unreasonable if it is the product of a procedure that does not follow Booker's[1] requirements, regardless of the actual

---

[1] United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

sentence. Additionally, a sentence may be substantively unreasonable, regardless of the procedure used. United States v. Hunt, 459 F.3d 1180, 1182 n.3 (11th Cir. 2007).

Canpaz asserts that we are not bound by our pre-Booker precedent. But this argument is inaccurate. As the government correctly notes, Canpaz conflates the reasonableness standard with individual sentencing decisions. This court has held, after Booker, the same standards apply to individual sentencing decisions that existed before Booker. Thus, it is the ultimate sentence, and not the individual decisions, that we review for reasonableness. United States v. Martin, 455 F.3d 1227, 1237 (11th Cir. 2006), 127 S.Ct. 2953 (2007).

Here, there was no procedural unreasonableness in Canpaz's sentence. The court stated that it knew the Guidelines were advisory, and it considered both the Guidelines range and the § 3553(a) sentencing factors. See Talley, 431 F.3d at 786 ("[A]n acknowledgment by the district court that it has considered the defendant's arguments and the factors in section 3553(a) is sufficient under Booker."); United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005). This court does not presume reasonable a sentence within the properly calculated Guidelines range. See United States v. Campbell, 2007 WL 2020170, *5 (11th Cir. Jul 13, 2007); United States v. Hunt, 459 F.3d 1180, 1185 (11th Cir. 2006). Recently, however, the U.S. Supreme Court upheld such a presumption, noting that a sentence, independently calculated by the district court in accordance with Booker, that falls within the properly calculated Guidelines range "significantly

increases the likelihood that the sentence is a reasonable one." See United States v. Campbell, 2007 WL 2020170 at \*5 (citing Rita v. United States, 551 U.S. –, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007)).  Regardless of whether the district court applied the presumption, on this record, in which the court followed Booker's requirements, there was no procedural unreasonableness.

Nor was the sentence imposed substantively unreasonable.  The court considered the sentencing factors and the Guidelines range and imposed a sentence at the low end of the Guidelines.  Given the amount of drugs involved, the sentence was not unreasonable.  Canpaz has not met his burden of showing his sentence was unreasonable.

Finally, the court's failure to consider Canpaz's alien status was not plainly erroneous, as alien status does not warrant a reduction.  See United States v. Veloza, 83 F.3d 380, 382 (11th Cir. 1996) (rejecting downward departure based on status as an alien), overruled on other grounds, United States v. Campbell, 181 F.3d 1263 (11th Cir. 1999).  Thus, we conclude that the sentence imposed was reasonable.

### III. CONCLUSION

Accordingly, we **AFFIRM** the decision of the district court.