[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 28, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-12266
Non-Argument Calendar

_____

D. C. Docket No. 06-20716-CR-DMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDUARDO MIGUEL MOLE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(January 28, 2008)**

Before CARNES, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Eduardo Miguel Mole ("Mole") appeals his twelve-month-and-one-day

sentence imposed pursuant to a guilty plea to one count of conspiracy to evade currency reporting requirements. After review, we affirm.

## I. BACKGROUND

Mole pled guilty to conspiracy to evade currency reporting requirements by concealing more than $10,000 in United States currency, in violation of 31 U.S.C. § 5332(a), (b)(1) and 18 U.S.C. § 371. In his written plea agreement, Mole agreed to forfeit all of the currency seized from him.

According to the Presentence Investigation Report ("PSI"), Mole and his girlfriend, Anna Ocasio, were stopped for a routine examination by Customs and Border Protection ("CBP") Officers at Miami International Airport as they were leaving for Panama. Mole told CBP Officers that he was carrying $4,000 in cash and indicated on a customs form that he was carrying $4,000 and was not transporting more than $10,000. When asked by CBP officers to present all the money he was carrying, Mole produced $9,081 from his person.

CBP Officers questioned Ocasio separately. Ocasio told them that she thought she was carrying about $2,000 in cash and that the money was hers. Because she was not exactly sure of the amount of money she was carrying, Ocasio indicated on a customs form that she was carrying $3,000 in cash and was not carrying more than $10,000. When CBP Officers asked Ocasio to present all the

2

money she was carrying, she retrieved approximately $8,000 from her person. She then told CBP Officers that the money was Mole's.

Mole confirmed that Ocasio was carrying his money and that he had asked her to do so because he did not want to have to declare more than $10,000. Although Mole stated there was no additional currency in his carry-on luggage, a search of the luggage revealed an additional $36,000. A search of Ocasio's luggage retrieved another $27,000. The total amount of money carried by Mole and Ocasio was $80,081.

Mole signed a statement in which he admitted having $80,000 in cash on him. Mole indicated that the cash was legitimate money from his business and that he had planned to use it to invest in a condominium in Panama.

The PSI calculated a base offense level of 14 based on an initial offense level of 6, pursuant to U.S.S.G. § 2S1.3(a)(2), and an additional 8 levels because the value of the funds was more than $70,000 but not more than $120,000, pursuant to U.S.S.G. § 2B1.1(b)(1)(E). The PSI applied (1) a two-level enhancement for the offense involving bulk cash smuggling, pursuant to U.S.S.G. § 2S1.3(b)(1)(B), and (2) a three-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b), which resulted in a total offense level of 13.

The PSI also determined that Mole had a criminal history category of I.

Mole's criminal history reflected: (1) a 1997 state court conviction for third-degree grand theft; (2) prior convictions for a municipal ordinance violation and disorderly conduct in which adjudication was withheld with fines and costs in both; (3) arrests for (a) driving under the influence, (b) dealing in stolen property and "vehicle alternate ID/possession," and (c) resisting an officer; and (4) nine minor traffic convictions. Based on an offense level of 13 and a criminal history category of I, Mole's advisory guidelines range was twelve to eighteen months' imprisonment.

Before sentencing, Mole filed a motion seeking a sentence below the advisory guidelines range because his offense was a victimless crime, his prior encounters with the law were minor, he had a good employment history, and he had made amends by forfeiting his life savings and accepting responsibility for the crime.

At sentencing, Mole's counsel raised no objections to the PSI or to the guidelines calculation. In addressing Mole's request for a downward sentencing variance, the district court stated, "I will tell you I guess from the outset that what disturbs me about your request is the criminal history. And so tell me why you believe that despite that a sentence outside of the advisory range is appropriate." Mole's counsel responded that this was a victimless regulatory crime and that the

4

money Mole was carrying was "legitimate, honest money" that was intended for a legitimate purpose, not drug money, as is usually the case in these crimes.

The district judge responded, "Of course, if it were drug money the guidelines would be vastly different. Isn't there an increase in the guidelines if the money is drug money?" Mole's counsel responded, "I don't think there is a distinction, sir," but the prosecutor stated, "The Court is correct. It would be an enhancement if the money was traceable to drug proceeds." The probation officer also stated, "That's correct."

Mole spoke on his own behalf and requested leniency because, if imprisoned, he would lose his business and his employees would lose their jobs.

Before imposing a sentence, the district court stated that it had considered the statements of all the parties, Mole's request, the PSI which contained the advisory guidelines, and the statutory factors. The district court determined that the low end of the advisory guidelines provided a reasonable sentence. The district court specifically noted that "[a] factor that weighs heavily in that determination is the criminal history." The district court sentenced Mole to 12 months and 1 day's imprisonment and 2 years of supervised release.

When asked for objections to the court's fact findings or the manner in which the sentence was pronounced, Mole's counsel responded, "None other than

the request we made to the Court previously." Mole timely appealed.

## II. DISCUSSION

We review the reasonableness of a sentence under an abuse-of-discretion standard. Gall v. United States, 552 U.S. ___, ___, 128 S. Ct. 586, 597 (2007). Unreasonableness may be procedural or substantive. United States v. Hunt, 459 F.3d 1180, 1182 n.3 (11th Cir. 2006). A sentence may be procedurally unreasonable if the district court does not follow the requirements of United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), regardless of the actual sentence imposed. Id. For a sentence to be procedurally reasonable, a district court must correctly calculate the guidelines range and consider the factors in 18 U.S.C. § 3553(a) in determining a reasonable sentence. United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005). "[A]n acknowledgment by the district court that it has considered the defendant's arguments and the factors in section 3553(a) is sufficient under Booker." Id. Once we determine that the sentence was procedurally reasonable, we evaluate the ultimate sentence's substantive reasonableness, considering the totality of the circumstances. Gall, 552 U.S. at __, 128 S. Ct. at 597. The party challenging the sentence bears the burden of showing that a sentence is unreasonable. United States v. Johnson, 485 F.3d 1264, 1272 (11th Cir. 2007).

6

On appeal, Mole argues that the sentencing judge erred on two grounds. First, Mole contends that the district court erred in not stating that it had considered all of the § 3553(a) factors in sentencing. However, "nothing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." United States v. Thomas, 446 F.3d 1348, 1357 (11th Cir. 2006) (quoting United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005)). It is sufficient if the district court acknowledges that it has considered the § 3553(a) factors. United States v. Amedeo, 487 F.3d 823, 832-33 (11th Cir.), cert. denied, ___ U.S. ___, 128 S. Ct. 671 (2007). Here, the district court twice stated before imposing its sentence that it had considered the statutory factors. Thus, Mole has not shown that the district court erred on this procedural ground.

Second, Mole contends that the district court sentenced him based on the erroneous view that his advisory guidelines range would have been higher if the money he was transporting was drug money. Mole contends that this was an error by the district court in calculating his advisory guidelines range. However, this does not correctly frame the issue because the district court properly calculated his advisory guidelines range of 12 to 18 months' imprisonment, and Mole has shown no error in that calculation. Instead, at most, Mole's claim is that the district court

based its decision on whether to sentence him below the advisory guidelines range, in part, on a mistaken belief that his guidelines range would have been higher if his currency was related to drug activity. In other words, Mole contends that the district court considered something that was not factually true in sentencing him.

However, Mole failed to raise an objection on this ground when the district court solicited objections after it imposed its sentence. Thus, we review this issue for plain error and will reverse only if "(1) there is an error; (2) the error is plain; (3) the error affects the defendant's substantial rights in that it was prejudicial and not harmless; and (4) the error seriously affects the fairness, integrity or public reputation of a judicial proceeding." United States v. Vance, 494 F.3d 985, 993 (11th Cir. 2007) (quotation marks omitted).

In its brief on appeal, the government concedes that Mole's advisory guidelines range would not have been higher if the money Mole was transporting was drug money.[1] Even assuming that the mistaken belief about the guidelines range for drug activity rose to the level of error that was plain, Mole has not shown

---

[1]Section 2S1.3(b)(1) of the guidelines provides for a two-level enhancement "[i]f (A) the defendant knew or believed that the funds were proceeds of unlawful activity, or were intended to promote unlawful activity; or (B) the offense involved bulk cash smuggling." U.S.S.G. § 2S1.3(b)(1). The PSI had already applied a two-level enhancement under this subsection in calculating Mole's guidelines range because his offense involved "bulk cash smuggling." Because this guidelines subsection is written in the disjunctive, it appears that Mole would not have received an additional two-level enhancement if the funds he was carrying were proceeds of unlawful activity or intended to promote unlawful activity, such as activity involving illegal drugs.

8

that it affected his substantial rights. The record reflects that the district court denied Mole's motion for a sentence variance based on its concerns about Mole's criminal history, not its incorrect assumption about the guidelines range for drug activity. Before hearing Mole's argument on his motion for a sentence variance, the district court stated that "what disturbs me about your request is the criminal history." In determining that a sentence at the bottom of the advisory guidelines range was a reasonable sentence, the district court noted that "[a] factor that weighs heavily in that determination is the criminal history." Thus, the district court denied the motion for a sentencing variance based on a § 3553(a) factor – "the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1) – not its assumption about the guidelines range for drug activity. Furthermore, the district court explicitly stated that it had considered the statements of the parties and Mole's request for a sentencing variance, which necessarily included Mole's argument that his money was from a legitimate source and was intended to be used for a legitimate purpose. In light of these considerations, Mole has not shown that this procedural error constituted reversible plain error.[2]

**AFFIRMED.**

---

[2]Although we conclude that plain error review should apply to this procedural issue, we note that we would reach the same result if we were to apply an abuse-of-discretion standard of review.

9