[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 25, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-15699
Non-Argument Calendar

_____

D. C. Docket No. 07-00030-CR-01-JOF-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LAREDO MICHAEL SIMPSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 25, 2008)

Before CARNES, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Laredo Michael Simpson appeals his 41-month sentence, imposed after he pled guilty to (1) one count of preparing and submitting to the Internal Revenue Service ("IRS") a fraudulent income tax return claiming a false refund, in violation of 18 U.S.C. § 287; and (2) three counts of preparing and submitting, or causing others to prepare and submit, to the IRS fraudulent income tax returns claiming false refunds, in violation of § 287 and 18 U.S.C. § 2. On appeal, Simpson argues that the district court (1) clearly erred in imposing a two-level enhancement, pursuant to U.S.S.G. § 2B1.1(b)(10)(C)(I), for the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification, on the ground that "the taxpayers" gave him their personal information; (2) clearly erred in imposing a two-level enhancement, pursuant to U.S.S.G. § 3C1.1, for obstruction of justice, on the ground that he did not instruct a witness to lie to the IRS, as alleged; (3) clearly erred by denying a three-level reduction, pursuant to U.S.S.G. § 3E1.1, for acceptance of responsibility, on the ground that he accepted responsibility by pleading guilty; and (4) imposed an unreasonable sentence by failing to consider the factors set out in 18 U.S.C. § 3553(a). For the reasons discussed below, we affirm.

## I.

Simpson submitted to the IRS with his individual tax return a fictitious W-2

statement that included inflated earnings from, and withholdings by, his employer. Simpson also used the names and social security numbers of Corye E. Dorsey, Vickie D. Harris, and Elisha L. Willis to file tax returns. With their tax returns, Simpson submitted fictitious W-2 statements including false employers, earnings, and withholding amounts. Simpson received tax refunds in connection with these tax returns. Regarding Dorsey and Willis, Simpson also used their names and social security numbers to establish bank accounts for the purpose of receiving the tax refunds. Although he did not plead guilty to these other acts, Simpson also used the names and social security numbers of others to file at least 16 other tax returns, and submitted, with these tax returns, fictitious W-2 statements that included false employers, earnings, and withholding amounts.

The IRS interviewed several of the people whose personal information Simpson used. Some of these people indicated that they were aware that Simpson was filing their tax returns. The record does not clarify whether these people knew that Simpson was using false information to do so. Some of these people indicated that they were aware that Simpson was filing their tax returns, but were not aware that he was using false information to do so. Some of these people indicated that they were not aware that Simpson was using their names and social security numbers to file tax returns and had not given him permission to do so. The record

does not clarify into which category of knowledge Dorsey or Willis fell.

One of the people whose social security numbers were used, Tsushima Marshall, reported to the IRS that, approximately one hour after her initial IRS interview, Simpson called her on the telephone and instructed her that she might be interviewed by the IRS and should deny knowing him. Simpson instructed Marshall to instead claim that someone else prepared her tax return for the year in question. Also, during a post-conviction interview with a probation officer concerning his assets, Simpson only reported ownership of a single residence. This information, which was used to set Simpson's bond, later was determined to be inaccurate when the probation officer learned that Simpson also had ownership interests in five other residences. Furthermore, although Simpson was indicted on January 23, 2007, for his activity within the tax-return scheme, he later attempted, on January 27, 2007, to submit to the IRS with his individual tax return a fictitious W-2 form that included inflated earnings from and withholdings by his employer.[1]

---

[1] Based on this information, the probation officer calculated a guideline imprisonment range of 51 to 63 months. Specifically, the probation officer set Simpson's base offense level at 14, pursuant to U.S.S.G. § 2B1.1(b)(1)(E). The probation officer applied a two-level enhancement for the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification; a two-level enhancement under U.S.S.G. § 3B1.1(c) because Simpson was the organizer, leader, manager, or supervisor of the scheme; and a two-level enhancement for obstruction of justice. The probation officer declined to apply an acceptance-of-responsibility reduction, over Simpson's objection. Also, the probation officer set Simpson's criminal history category at IV. Each count of Simpson's conviction carries a statutory maximum of 60 months' imprisonment, pursuant to § 287.

At his sentencing hearing, Simpson apologized for his actions and indicated that he accepted full responsibility for what he had done. He also stated that: (1) just before his incarceration, his wife had been a good influence on him, he had been running a legitimate catering business, and he had been paying child support and becoming close with his children; (2) his wife had since become sick, and he would like to return to her as soon as possible; (3) since being incarcerated, he had behaved and had learned discipline and to live with a little bit, rather than a lot, of money; and (4) if released, he would not break the law again. The government requested a sentence at the low end of the guideline imprisonment range.

The district court acknowledged Simpson's "problems," but stated that its primary objective was to protect society from Simpson. To this end, the district court noted Simpson's relatively high criminal history category and stated that nothing in Simpson's "track record" indicated that Simpson could or would stay out of trouble if released. The district court noted that, in its experience, those convicted of financial fraud have a high tendency toward recidivism. The district court concluded that, given his criminal history, Simpson did not merit lenient treatment and that a sentence within Simpson's guideline imprisonment range probably did not "adequately capture[] the extent of [Simpson's] wrongdoing," but stated that it would have faith that a guideline sentence would suffice.

5

Accordingly, the district court sentenced Simpson at the low end of that range.[2]

## II.

After the Supreme Court's decision in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the sentencing court first must correctly calculate the guideline imprisonment range and then must treat that range as advisory and impose a reasonable sentence. United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005). With regard to the district court's guideline-imprisonment-range calculation, we review "the district court's findings of fact for clear error and its application of the sentencing guidelines to those facts de novo." United States v. Humber, 255 F.3d 1308, 1311 (11th Cir.2001) (citation omitted).

### a.

Pursuant to § 2B1.1(b)(10)(C)(I), a two-level enhancement is warranted when the defendant's offense conduct involved "the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any means of identification." "[T]he term 'means of identification' refers to any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any" name, social security number, or

---

[2] The district court calculated a guideline imprisonment range of 41 to 51 months. While the district court applied the means-of-identification and obstruction-of-justice enhancements recommended by the probation officer, and also declined to apply an acceptance-of-responsibility reduction despite Simpson's objection, it chose not to apply a role enhancement.

access device. 18 U.S.C. § 1028(d)(7)(A), (D); U.S.S.G. § 2B1.1, comment. (n.9(A)). An "access device" includes any "account number" that can be used to initiate a transfer of funds. 18 U.S.C. § 1029(e)(1). The commentary to § 2B1.1 sets forth examples of the types of conduct to which the means-of-identification enhancement applies, including when "[a] defendant obtains an individual's name and social security number from a source (e.g., from a piece of mail taken from the individual's mailbox) and obtains a bank loan in that individual's name." U.S.S.G. § 2B1.1, comment. (n.9(C)(ii)(I)). The commentary explains that, "[i]n this example, the account number of the bank loan is the other means of identification that has been obtained unlawfully." Id.

The district court did not err in imposing a means-of-identification enhancement. See Humber, 255 F.3d at 1311. The record demonstrates that Simpson obtained Dorsey's and Willis's names and social security numbers and then obtained bank accounts using this information. Accordingly, Simpson used two means of identification - names and social security numbers - to obtain another means of identification - bank account numbers. See 18 U.S.C. §§ 1028(d)(7), 1029(e)(1); U.S.S.G. § 2B1.1, comment. (n.9(A), (C)(ii)(I)). The record also suggests that Simpson obtained and used Dorsey's and Willis's names and social security numbers without their permission. Although Simpson claims that "the

7

taxpayers" provided their information, he presents no evidence to, and the record otherwise does not, show that Dorsey and Willis gave him their information. Moreover, Simpson does not argue, and the record otherwise does not suggest, that Dorsey and Willis gave Simpson permission to use any information provided to open bank accounts.

**b.**

Pursuant to § 3C1.1, a two-level enhancement is warranted when the defendant willfully obstructs the investigation, prosecution, or sentencing of his offense of conviction, in a manner related to his offense of conviction, relevant conduct, or a closely related offense. The commentary to § 3C1.1 provides a non-exhaustive list of conduct to which the enhancement might apply, including "threatening, intimidating, or otherwise unlawfully influencing a codefendant, witness, or juror, directly or indirectly, or attempting to do so" and "providing materially false information to a probation officer in respect to a presentence or other investigation for the court." U.S.S.G. § 3C1.1, comment. (n. 4(a), (h)). The commentary, however, also limits the conduct to which the enhancement might apply, by specifically excluding "providing incomplete or misleading information, not amounting to a material falsehood, in respect to a presentence investigation." U.S.S.G. § 3C1.1, comment. (n. 5(c)). Based on this commentary, we have held

8

that determining whether the enhancement applies depends on whether the information withheld was material. United States v. Odedina, 980 F.2d 705, 706-08 (11th Cir. 1993) (regarding a defendant's failure to disclose to a probation officer his aliases and prior misdemeanor arrest). The commentary defines "material" as "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1, comment. (n. 6).

The district court did not err in imposing an obstruction-of-justice enhancement. See Humber, 255 F.3d at 1311. The record demonstrates that Simpson attempted to influence a witness to lie to the IRS and lied to a probation officer in the course of the presentence investigation. See U.S.S.G. § 3C1.1, comment. (n. 4(a)(h)). Although Simpson "vehemently" denied telling Marshall to lie, an IRS agent told the district court that he overheard Marshall recounting the situation before testifying before the grand jury. Nothing in the record suggests that the district court erred in crediting the agent's statements over Simpson's denial. Also, the probation officer informed the district court that Simpson failed to inform a probation officer of his ownership of certain residences. His ownership of these assets was material to the presentence investigation because it would tend to influence the district court to set a higher bond for Simpson. See Odedina, 980

F.2d at 706-08; U.S.S.G. § 3C1.1, comment. (n. 6)).

**c.**

Pursuant to § 3E1.1, a two-level reduction is warranted if the defendant "clearly demonstrates acceptance of responsibility for his offense." An additional one-level reduction is warranted if the government indicates that the "defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty." U.S.S.G. §3E1.1(b). The commentary to § 3E1.1 instructs that "[c]onduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct," such that an obstruction-of-justice enhancement and acceptance-of-responsibility reduction should be applied in tandem only in "extraordinary cases." U.S.S.G. § 3E1.1, comment. (n. 4). The commentary also instructs that the district court, in determining whether to apply the initial reduction, may consider the defendant's "voluntary termination or withdrawal from criminal conduct or associations." U.S.S.G. § 3E1.1, comment. (n. 1(b)).

In United States v. Villarino, 930 F.2d 1527, 1529 (11th Cir. 1991), we affirmed the denial of an acceptance-of-responsibility reduction on continuing-criminal-activity grounds when, "although [the] appellant acknowledged

responsibility for his criminal behavior, [the PSI demonstrated that] since his release on bond he has committed, and has been found guilty of, nine additional offenses." Likewise, in United States v. Scroggins, 880 F.2d 1204, 1215-16 (11th Cir. 1989), we affirmed the denial of an acceptance-of-responsibility reduction on continuing-criminal-activity grounds when the "evidence showed [that the defendant] continued to use cocaine after his arrest and thus had not turned away from the lifestyle that motivated his offense."

The district court did not err in declining to apply an acceptance-of-responsibility reduction. See Humber, 255 F.3d at 1311. The record demonstrates that Simpson continued his criminal activity after being indicted. See U.S.S.G. § 3E1.1, comment. (n. 1(b)). Specifically, after being indicted on January 23rd, Simpson attempted to file a fraudulent individual tax return on January 27th. This continued criminal activity was not only similar to that in Villarino and Scroggins, it demonstrated even less acceptance of responsibility because Simpson's continued criminal activity involved the same crime as that charged in the indictment. See Villarino, 930 F.2d 1527 at 1529; Scroggins, 880 F.2d at 1215-16. Also, as discussed above, Simpson appropriately received an obstruction-of-justice enhancement, suggesting that he did not accept responsibility. See U.S.S.G. § 3E1.1, comment. (n. 4)). Simpson has not demonstrated the "extraordinary"

circumstances necessary to overcome this suggestion.  See U.S.S.G. § 3E1.1,

comment. (n. 4).

**d.**

The district court must impose a sentence that is both procedurally and

substantively reasonable.  United States v. Hunt, 459 F.3d 1180, 1182 n.3 (11th

Cir. 2006); Gall v. United States, 552 U.S. __, 128 S.Ct. 586, 597, 169 L.Ed.2d

445 (2007).  The Supreme Court has held that the reasonableness of a sentence is

reviewed under an abuse-of-discretion standard.  Gall, 552 U.S. at __, 128 S.Ct. at

597.  "[T]he party who challenges the sentence bears the burden of establishing

that the sentence is unreasonable."  Talley, 431 F.3d at 788.

The Supreme Court has explained that a sentence may be procedurally

unreasonable if the district court improperly calculates the guideline imprisonment

range, treats the guidelines as mandatory, fails to consider the appropriate statutory

factors, bases the sentence on clearly erroneous facts, or fails to adequately explain

its reasoning.  Gall, 552 U.S. __, 128 S.Ct. at 597. The Supreme Court also has

explained that review for substantive reasonableness involves inquiring whether

the statutory factors in § 3553(a) support the sentence in question.  Id. at __, 128

S.Ct. at 598-99.  Pursuant to § 3553(a), the sentencing court shall impose a

sentence "sufficient, but not greater than necessary" to comply with the purposes

12

of sentencing listed in § 3553(a)(2), namely reflecting the seriousness of the offense, promoting respect for the law, providing just punishment for the offense, deterring criminal conduct, protecting the public from future criminal conduct by the defendant, and providing the defendant with needed educational or vocational training or medical care. See 18 U.S.C. § 3553(a)(2). The statute also instructs the sentencing court to consider certain factors, including the nature and circumstances of the offense and the history and characteristics of the defendant. See 18 U.S.C. § 3553(a)(1).

In considering the § 3553(a) factors and explaining the reasoning behind its choice of sentence, the district court need not discuss or state that it has explicitly considered each factor of § 3553(a). Talley, 431 F.3d at 786. Rather, even a brief explanation of its reasoning, coupled with a clear consideration of the parties' arguments, will suffice. See Rita, 551 U.S. at __, 127 S.Ct. at 2469.

The district court did not impose an unreasonable sentence. See Talley, 431 F.3d at 786. Although the district court did not explicitly refer to § 3553(a), the record makes clear that the district court considered the parties' arguments and the principles espoused by § 3553(a). Specifically, before imposing a sentence, the district court heard the parties' arguments on the objections and Simpson's statement on his character and family's troubles. The district court explicitly stated

that it had considered Simpson's family's troubles. Thus, it is clear that the district court considered the parties' arguments. See Rita, 551 U.S. at __, 127 S.Ct. at 2469.

In choosing a sentence, the district court indicated that it especially was guided by Simpson's lengthy criminal history, the fear of Simpson's recidivism, and the need to protect the public from Simpson. The district court also indicated that it felt that a 41-month sentence was the minimal sentence that it could impose and may actually be insufficient. Thus, it is apparent that the district court implicitly considered the relevant factors, namely Simpson's history and characteristics, promoting respect for the law, deterring criminal conduct, and protecting the public from future criminal conduct by Simpson. See 18 U.S.C. § 3553(a)(1), (2); Rita, 551 U.S. at __, 127 S.Ct. at 2469. The fact that the district court did not consider all of the § 3553(a) factors does not render Simpson's sentence unreasonable. See Talley, 431 F.3d at 786. It also is apparent that the district court strived to impose a sentence that was not greater than necessary. See 18 U.S.C. § 3553(a)(2).

## III.

Because the district court did not clearly err in applying a means-of-identification and obstruction-of-justice enhancements or denying an acceptance-

14

of-responsibility reduction, and did not impose an unreasonable sentence, we affirm Simpson's sentences.

**AFFIRMED.**