[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-15144
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 21, 2010
JOHN LEY
CLERK

D. C. Docket No. 09-00064-CR-ORL-19KRS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE GARCIA-ORTEGA,
a.k.a. Humberto Garcia-Vega,
a.k.a. Humberto Garcia,
a.k.a. Humberto Garcia-Varela,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 21, 2010)

Before EDMONDSON, BIRCH and FAY, Circuit Judges.

PER CURIAM:

Jose Garcia-Ortega appeals from his sentence imposed for illegally re-entering the United States after a previous deportation from the United States, in violation of 8 U.S.C. § 1326(a) and (b)(2). On appeal, Garcia-Ortega argues that the district court misapprehended its authority to grant him a downward departure under U.S.S.G. § 4A1.3. In addition, he also argues that his 14-month sentence, which was within his guideline range, was substantively unreasonable. In support of this argument, he points out that, because his guideline range fell within Zone C of the U.S.S.G. Sentencing Table, the district court possessed discretion under U.S.S.G. § 5C1.1(d) to order that he serve only five months' imprisonment, to be followed by a term of home confinement or community surveillance.

As further support for his contention that his sentence was substantively unreasonable, Garcia-Ortega also points out that: (1) he re-entered the United States in order to escape poor conditions in Mexico and find employment; (2) he accepted responsibility for his present offense by pleading guilty; (3) his previous drug offenses involved only small amounts of drugs consistent with personal use; (4) he had already been in state prison for several months before he was charged in the present case and transferred into federal custody; (5) despite his past convictions for drug possession, the court merely requested, and did not require, that he undergo drug therapy while in prison; and (6) to the extent that the court

2

emphasized a need for him to undergo vocational training in selecting his sentence, this emphasis was unreasonable because he has substantial experience in the field of construction.

For the reasons set forth below, we affirm.

## I.

A federal grand jury indicted Garcia-Ortega, charging him with illegally re-entering the United States after a previous deportation from the United States, in violation of 8 U.S.C. § 1326(a) and (b)(2). The indictment further alleged that Garcia-Ortega previously had been deported from the United States on four separate occasions. Garcia-Ortega ultimately pled guilty to the offense.

In preparing the presentence investigation report ("PSI"), the probation officer determined that Garcia-Ortega's total adjusted offense level was 10. In reviewing Garcia-Ortega's criminal history, the probation officer noted that he had sustained at least two previous convictions for illegally entering the United States. In addition, Garcia-Ortega had sustained numerous convictions for possession of cocaine and heroin. Upon his arrest in most of these cases, Garcia-Ortega gave authorities an alias, instead of his real name. The probation officer also reported that, on two separate occasions during 1992, Garcia-Ortega had been arrested for delivery of a controlled substance. Garcia-Ortega had been serving his sentence

3

for his 2009 state conviction before he was charged with the present offense and transferred into federal custody in April 2009. The probation officer determined that Garcia-Ortega's criminal history yielded a criminal history category of III. Based on Garcia-Ortega's total offense level of 10 and criminal history category of III, the officer set his guideline range at 10 to 16 months' imprisonment. In addition, the probation officer provided information about Garcia-Ortega's vocational skills, reporting that he had training as construction worker, and had expressed a desire to learn a trade.

Garcia-Ortega filed a motion for a downward departure under U.S.S.G. § 4A1.3, arguing that his criminal history category of III over-represented the seriousness of his past crimes. He conceded that the PSI accurately set forth the past convictions used to calculate his criminal history category, but argued that his past crimes constituted minor infractions, as they were based on his past possession of small amounts of illegal drugs for personal use. He also argued that his criminal history category overstated the likelihood that he would commit future crimes, especially since he faced deportation to Mexico after serving the sentence imposed in this case.

At sentencing, the court adopted the factual findings and guideline calculations set forth in the PSI. Garcia-Ortega addressed his motion for a

4

downward departure, and reasserted the arguments set forth in his written motion. The court reviewed Garcia-Ortega's criminal history, and denied his motion for a downward departure. In denying the motion, the court stated:

> Regardless of the amounts that were the subject of these various cases, he has shown by his repeated involvement with drugs that he is not a stranger to controlled substances and even to the criminal justice system, so he apparently has not learned a lesson from the various prior criminal matters that have been brought against him. And I do not believe that the small amounts of drugs that may have been involved in these cases, if that is the case, results in an over-representation of seriousness for his criminal history.

The parties next addressed the statutory sentencing factors set forth in 18 U.S.C. § 3553(a). Garcia-Ortega pointed out that his sentencing range was within Zone C of the U.S.S.G. Sentencing Table. Relying on U.S.S.G. § 5C1.1(d), he argued that, because his sentencing range fell within Zone C, the court possessed discretion to sentence him to five months' imprisonment, with the remainder to be served as a term of supervised release under the supervision of the immigration authorities. In addition, Garcia-Ortega asserted that he should receive a "compassionate" sentence because he had entered the United States due to poor conditions in Mexico and his desire to find employment. He also pointed out that he had been in prison since January 2009 due to his state conviction. Garcia-Ortega further argued that he did not pose a threat to society because he soon would be deported.

5

Before imposing sentence, the court reviewed the information in the PSI, and found that, even if Garcia-Ortega's previous offenses did not involve large amounts of drugs, his criminal history was still serious. The court also found that Garcia-Ortega not only had "thumbed his nose at authorities" by repeatedly re-entering the United States without permission, but that he had also committed crimes while he was in the United States. Based on this conduct, the court found that there was a need to protect the public from Garcia-Ortega's future crimes. The court also noted the need to provide Garcia-Ortega with correctional treatment and vocational training, as well as the fact that he had accepted responsibility for his offense by pleading guilty. After discussing these considerations, the court sentenced Garcia-Ortega to a term of 14 months' imprisonment. The court specified that, while Garcia-Ortega was in prison, drug therapy was requested, but not required. The court further ordered that Garcia-Ortega was required to participate in a substance abuse program while he was on supervised release. The court asked the parties if there were any objections to the sentence and the manner in which it was imposed, and the parties stated that there were no objections.

## II.

"We lack jurisdiction to review a sentencing court's refusal to depart downward when the decision is based on the court's discretionary authority."

*United States v. Chase*, 174 F.3d 1193, 1195 (11th Cir. 1999). "We do, however, have jurisdiction if the sentencing court erroneously believes it lacks discretionary authority to depart downward." *Id.* We assume that the district court understood its discretionary authority to grant a departure where nothing in the record indicates that the court did not understand the nature of this authority. *Id.*

Here, the court did not expressly state that it possessed authority to grant a downward departure, but it did not indicate that it believed that it lacked this authority. Significantly, the court considered Garcia-Ortega's motion for a downward departure on the merits, and stated that it denied his request because his criminal history category did not over-represent the seriousness of his past crimes. By making this statement, the court indicated that it possessed discretion to depart downward, but found that the facts of this case did not justify a departure. In addition, the parties did not make any arguments concerning the court's authority that would have required it to expressly state whether it believed that it possessed authority to grant a downward departure. Accordingly, the record reveals no indication that the court believed that it lacked authority to depart downward and, as a result, we assume that the court correctly understood its authority in this regard. Because it appears that the court correctly understood its authority, we lack jurisdiction to consider the court's denial of Garcia-Ortega's motion for a

7

downward departure.

## III.

After *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), "a sentence may be reviewed for procedural or substantive unreasonableness." *United States v. Hunt*, 459 F.3d 1180, 1182 n.3 (11th Cir. 2006). We review a defendant's sentence for reasonableness. *Gall v. United States*, 552 U.S. 38, 46-47, 128 S.Ct. 586, 594, 169 L.Ed.2d 445 (2007); *United States v. Talley*, 431 F.3d 784, 785 (11th Cir. 2005). Review for reasonableness is deferential. *Talley*, 431 F.3d at 788. The reasonableness of a sentence is reviewed under an abuse-of-discretion standard regardless of whether the sentence imposed is inside or outside a defendant's guideline range. *United States v. Pugh*, 515 F.3d 1179, 1189-90 (11th Cir. 2008) (citing *Gall*, 552 U.S. at 51, 128 S.Ct. at 597). Under the abuse-of-discretion standard, we will reverse only if the district court made a clear error of judgment. *Id.* at 1191.

"[A] sentence may be substantively unreasonable, regardless of the procedure used." *Hunt*, 459 F.3d at 1182 n.3. The party challenging the sentence "bears the burden of establishing that the sentence is unreasonable in the light of [the] record and the factors in section 3553(a)." *Talley*, 431 F.3d at 788. Section 3553(a) provides that district courts imposing a sentence must consider:

8

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and (3) the kinds of sentences available.

18 U.S.C. § 3553(a)(1)-(3). In addition, the court should also consider the Sentencing Guidelines range, pertinent policy statements of the Sentencing Commission, the need to avoid unwanted sentencing disparities, and the need to provide restitution to victims. 18 U.S.C. § 3553(a)(4)-(7). We have recognized that "there is a range of reasonable sentences from which the district court may choose." *Talley*, 431 F.3d at 788. Where the court imposes a sentence that is within the applicable guideline range, we ordinarily expect that sentence to be reasonable. *Id.*

Pursuant to § 5C1.1(d), where a defendant's guideline range falls within Zone C of the U.S.S.G. Sentencing Table, the defendant's sentence may be fulfilled by either: (1) imprisonment; or (2) a sentence whereby at least half of the minimum term suggested by the Guidelines is served in prison, and the remainder is served in the form of supervised release that substitutes home confinement or community confinement for imprisonment. U.S.S.G. § 5C1.1(d).

9

Here, regardless of whether the substantive reasonableness of Garcia-Ortega's sentence is reviewed for plain error or abuse of discretion, he has failed to demonstrate that his sentence was substantively unreasonable. The district court reasonably found that Garcia-Ortega demonstrated disregard for the law by illegally re-entering the United States after previously having been deported on four separate occasions. In addition, Garcia-Ortega committed numerous drug crimes in the United States, and often provided authorities with an alias in order to evade responsibility for these crimes. Although Garcia-Ortega's convictions may have involved small quantities of drugs that were consistent with only personal use, he was twice arrested for the delivery of narcotics. Moreover, the court reasonably found that Garcia-Ortega's numerous offenses for drug possession and illegal re-entry demonstrated that his past sentences had failed to reform his conduct. In light of these facts, the district court did not abuse its discretion in selecting a 14-month sentence, and the facts that Garcia-Ortega points to do not demonstrate otherwise.

While Garcia-Ortega relies on § 5C1.1(d), this section merely provides a district court with discretion to permit a defendant to serve a portion of his sentence under home confinement or community surveillance, and does not mandate such a sentence in any case. Finally, Garcia-Ortega's argument that the

special provisions of his sentence demonstrated its unreasonableness lacks merit. The court mandated that Garcia-Ortega participate in a substance abuse program while on supervised release.  Even assuming that the court relied on a perceived need for vocational training in selecting Garcia-Ortega's sentence, this reliance would not be unreasonable, as Garcia-Ortega informed authorities that he desired to learn a trade.

**AFFIRMED.**