[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 6, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-12032
Non-Argument Calendar

_____

D. C. Docket No. 06-20329-CR-ASG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

VICTOR POLANCO-CABRERA,
a.k.a. Perfecto Marrero,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(February 6, 2008)**

Before ANDERSON, BIRCH  and HULL, Circuit Judges.

PER CURIAM:

Victor Polanco-Cabrera appeals his sentence of 210 months of imprisonment

for conspiring to possess with intent to distribute heroin, in violation of 21 U.S.C. §§ 841, 846. He argues that his sentence was greater than necessary to achieve the purposes set forth in 18 U.S.C. § 3553(a) and was, therefore, unreasonable. We AFFIRM his sentence.

## I. BACKGROUND

Polanco-Cabrera was indicted for conspiring to possess with intent to distribute 100 grams or more of a mixture or substance containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 841, 846 (Count One), and for possessing with intent to distribute 100 grams or more of a mixture or substance containing a detectable amount of heroin, in violation of 21 U.S.C. § 841 (Count Two). Polanco-Cabrera initially pled not guilty on both counts, but shortly before trial, he entered a guilty plea as to Count One.

The facts of the case were as follows: a Drug Enforcement Administration ("DEA") confidential source ("CS") called Polanco-Cabrera to negotiate a purchase of heroine. The CS met with Polanco-Cabrera at a Taco Bell restaurant, and, although no transaction took place at that point, the two discussed a deal involving one kilogram of heroin. Soon thereafter, Polanco-Cabrera called the CS and told him that he could arrange for the sale of one kilogram of heroin that day, and they scheduled a meeting at a Burger King restaurant. Polanco-Cabrera

arrived at the restaurant and, when Polanco-Cabrera presented a package to the CS, DEA agents arrested him. The DEA's laboratory analysis showed that the package seized at the Burger King contained a mixture of morphine, heroin, and codeine and weighed 496.3 grams. Additionally, the DEA found .17 grams of cocaine on Polanco-Cabrera's person.

Polanco-Cabrera had previous criminal convictions for the following offenses: (1) grand larceny; (2) conspiracy to traffic cocaine; (3) trafficking in cocaine; (4) aggravated assault with a deadly weapon; (5) two counts of battery; (6) aggravated battery; (7) improper exhibition of a dangerous weapon; (8) burglary with assault or battery therein while armed; (9) trespassing; and (10) driving with a suspended license. This gave him 12 criminal history points. Additionally, as the probation officer determined, it qualified Polanco-Cabrera as a career offender pursuant to U.S.S.G. § 4B1.1(a) (2006). This resulted in a criminal history category of VI. U.S.S.G. § 4B1.1(b). For his offense, the statutory minimum was 5 years in prison, and the maximum was 40 years. 21 U.S.C. § 841(b)(1)(B)(i). Accordingly, Polanco-Cabrera's base offense level was 34. U.S.S.G. § 4B1.1(b)(B). The probation officer recommended that Polanco-Cabrera receive a three-level reduction, pursuant to U.S.S.G. § 3E1.1(a) and (b), for acceptance of responsibility. An adjusted offense level of 31 and a criminal history

category of VI resulted in an advisory Guidelines range of 188 to 235 months.

At sentencing, Polanco-Cabrera conceded that he qualified as a career offender pursuant to § 4B1.1. Polanco-Cabrera also conceded that, as a career offender, he could not qualify for a minor-role reduction. Because Polanco-Cabrera's guilty plea had come only after significant preparation for trial had already been made, the government refused to recommend the additional one-level reduction pursuant to § 3E1.1(b). Accordingly, the court found that, under the Guidelines, Polanco-Cabrera had a total offense level of 32, a criminal history category of VI, and, thus, a range of 210 to 262 months.

The government then argued for a sentence within the Guidelines range, asserting that such a sentence was appropriate because: (1) Polanco-Cabrera had a very long and serious criminal history, including violent felonies; (2) he would have had a criminal history category of V even without the career offender enhancement; (3) he had continued to commit crimes even as he had gotten older; (4) a sentence within the Guidelines range was necessary to reflect the seriousness of his offense because it had involved a significant amount of heroin; and (5) there was no "special condition that [w]ould place [Polanco-Cabrera] outside the general range of individuals who committed this crime as career offenders." R3 at 8. The government argued that a sentence of 210 months – at the low-end of the range –

4

would be appropriate in light of the fact that Polanco-Cabrera had pled guilty.

Polanco-Cabrera's attorney argued that a sentence below the Guidelines range would be more appropriate in light of the factors set forth in 18 U.S.C. § 3553(a). Specifically, he argued that he was nothing more than a middleman and was used by those who imported or distributed the drugs. He pointed out that the prior convictions supporting the increase pursuant to § 4B1.1 had come from as long ago as 1989, 1992, and 1993, and that his convictions in 1992, 1993, and 1997 had been domestic abuse cases involving his former spouse. Polanco-Cabrera also explained that he was addicted to cocaine and to Percoset and had significant medical problems, including diabetes, internal bleeding, and a skin condition. He also observed that, because he was 53 years old, a sentence of 210 months would mean that he would not be released from prison until he was over 70 years old. He argued that a sentence of 210 months was more than necessary, and suggested that he should not be sentenced to more than 10 years.

The government responded that, even if Polanco-Cabrera could receive a minor-role reduction, which he could not because of his classification as a career offender, such a reduction would not be appropriate because of his relevant conduct. Because he had brought the heroin to the location where the transaction was to take place, he could not be said to have played a minor role in the

5

conspiracy. Further, he had a violent criminal history. Additionally, the government pointed out that any health problems Polanco-Cabrera might have could be handled in a penal setting. Polanco-Cabrerra declined the court's invitation to make a personal statement.

The court stated that it had considered the parties' statements, the presentence investigation report, the advisory Guidelines, and the relevant statutory factors. On the basis of this review, the court found that Polanco-Cabrera's role in the offense had been "significant" because he was the facilitator who coordinated the drug transaction, which involved 496 grams of heroin. R3 at 16. The court stated that it had calculated Polanco-Cabrera's criminal history independent of § 4B1.1 and that, even without the career offender enhancement, he would still have a category V criminal history. Thus, the court reasoned, the career offender classification did not overstate Polanco-Cabrera's criminal history. The court also noted that some of Polanco-Cabrera's offenses were recent. The court found that a sentence within the career offender advisory Guidelines range was "appropriate given all of the circumstances, the seriousness of this offense and the need to have deterrence here from criminal conduct and future crimes," and sentenced Polanco-Cabrera to 210 months.[1] R3 at 17. Polanco-Cabrera objected to the sentence on

---

[1]At the government's request, the court dismissed Count Two.

the basis of the objections he had already stated.

On appeal, Polanco-Cabrera argues that his sentence is unreasonable in light of the factors set forth in 18 U.S.C. § 3553(a). He argues that the district court placed undue weight on the applicable Guidelines range and gave more weight than was warranted to his criminal history. He emphasizes that his prior crimes of violence arose from a domestic relationship that ended in 1997, that his only conviction since then, in 1999, was for a driving violation, that his prior drug offense involving 5 kilograms of cocaine was in 1989, and that his violent crimes were 12 and 13 years prior to the instant offense. Polanco-Cabrera also argues that the district court should have accorded more weight to mitigating factors such as his remorse, his minor role in the offense, his age, and his deteriorating medical condition. He argues that, for these reasons, his sentence was unreasonable in that it was greater than necessary to achieve the purposes set forth in § 3553(a).

## II. DISCUSSION

In United States v. Booker, the Supreme Court held that sentences are to be reviewed for "unresonable[ness]." United States v. Booker, 543 U.S. 220, 261, 125 S. Ct. 738, 765 (2005) (alteration in original). "[A] sentence may be reviewed for procedural or substantive unreasonableness." United States v. Hunt, 459 F.3d 1180, 1182 n.3 (11th Cir. 2006). "[I]n reviewing the ultimate sentence imposed by

the district court for reasonableness, we consider the final sentence, in its entirety, in light of the § 3553(a) factors." United States v. Martin, 455 F.3d 1227, 1237 (11th Cir. 2006) (quotations and citation omitted). Finally, "[r]eview for reasonableness is deferential." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005) (per curiam).

Section 3553(a) provides that district courts must consider, inter alia, (1) the applicable Guidelines range, 18 U.S.C. § 3553(a)(4); (2) "the nature and circumstances of the offense" and "the history and characteristics of the defendant," § 3553(a)(1); (3) "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," § 3553(a)(2)(A); (4) the need for adequate deterrence, and protection of the public, § 3553(a)(2)(B), (C); and (5) "the need to avoid unwarranted sentence disparities," § 3553(a)(6). "We do not in this circuit presume reasonable a sentence within the properly calculated Guidelines range." United States v. Campbell, 491 F.3d 1306, 1313 (11th Cir. 2007). We have recognized, however, that the Supreme Court recently "upheld other circuits' decisions affording such a presumption, noting that a sentence, independently calculated by the district court in accordance with Booker, that falls within the properly calculated Guidelines range 'significantly increases the likelihood that the

8

sentence is a reasonable one.'" Id. (quoting Rita v. United States, 551 U.S. __, __, 127 S. Ct. 2456, 2463 (2007)). Accordingly, although a sentence within the Guidelines range is not per se reasonable, we would ordinarily expect such a sentence to be reasonable. Talley, 431 F.3d at 788.

"[A] district court may determine, on a case-by-case basis, the weight to give the Guidelines, so long as that determination is made with reference to the remaining section 3553(a) factors that the court must also consider in calculating the defendant's sentence." Hunt, 459 F.3d at 1185. "[A]n acknowledgment by the district court that it has considered the defendant's arguments and the factors in section 3553(a) is sufficient under Booker." Talley, 431 F.3d at 786. Finally, "the burden of establishing that the sentence is unreasonable in light of" the record and the § 3553(a) factors lies with the party challenging the sentence. Id. at 788.

Polanco-Cabrera does not dispute that the applicable Guidelines range in this case, 210 to 262 months, was correctly calculated by the district court. Further, the record reflects that the district court adequately considered the § 3553(a) factors when it sentenced Polanco-Cabrera. First, the district court stated that it had considered Palanco-Cabrera's arguments, the presentence investigation report, the Guidelines, and the factors set forth in § 3553(a). R3 at 16; see Talley, 431 F.3d at 786. Second, the district court also specifically addressed certain of the

9

§ 3553(a) factors. It considered "the nature and circumstances of the offense" when it stated that Polanco-Cabrera's role in the offense was "significant" in that he was the facilitator who coordinated the drug transaction, which involved 496 grams of heroin. R3 at 16; 18 U.S.C. § 3553(a)(1). It assessed "the history and characteristics of the defendant," as well as the need "to protect the public from further crimes of the defendant," when it noted that even without the career offender enhancement Polanco-Cabrera would have a criminal history category of V. R3 at 16-17; 18 U.S.C. § 3553(a)(1), (a)(2)(C). Finally, the district court stated that a sentence within the career offender advisory Guidelines range was appropriate in light of the circumstances, the seriousness of the offense, and the need to deter criminal conduct. R3 at 17; § 3553(a)(1), (a)(2)(A) and (B). Because the district court properly considered the § 3553(a) factors, the weight accorded the Guidelines is entirely within the court's discretion. See Hunt, 459 F.3d at 1185. Accordingly, Polanco-Cabrera's argument that the district court gave undue weight to the Guidelines is unavailing.

Additionally, the sentence imposed in this case, 210 months, was at the low-end of the Guidelines range, and we have stated that we would ordinarily expect a sentence within the applicable Guidelines range to be reasonable. Talley, 431 F.3d at 788. Further, the sentence here imposed was less than half the

10

statutory maximum of 40 years in prison, thereby providing another indicator that it was within the range of reasonable sentences. See United States v. Thomas, 446 F.3d 1348, 1357-58 (11th Cir. 2006) (affirming 121-month sentence as reasonable because, inter alia, that low-end Guidelines sentence was just over one-half of the 20-year statutory-maximum). For all of these reasons, we conclude that Polanco-Cabrera has failed to show that his sentence of 210 months in prison was unreasonable.

## III. CONCLUSION

Polanco-Cabrera appeals his 210-month sentence for conspiring to possess with intent to distribute heroin. Because the district court sentenced Polanco-Cabrera at the low-end of the Guidelines range after considering the § 3553(a) factors, and the record demonstrates adequate reasons for the sentence, we conclude that the sentence was not unreasonable. Accordingly, we **AFFIRM.**