[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 22, 2009
THOMAS K. KAHN
CLERK

No. 08-15959
Non-Argument Calendar

_____

D. C. Docket No. 07-00197-CR-T-23TBM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FAUSTO LEONARDO LOPEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 22, 2009)

Before BIRCH, HULL and FAY, Circuit Judges.

PER CURIAM:

Fausto Leonardo Lopez appeals his 157-month sentence following his convictions for distributing and conspiring to distribute methamphetamine. On appeal, he argues that his sentence, imposed in the middle of the applicable guideline range, was substantively unreasonable. For the reasons set forth below, we affirm.

## I.

Lopez pled guilty to conspiracy to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B)(viii), and distribution of 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii), and 18 U.S.C. § 2. A probation officer prepared a pre-sentencing investigation report ("PSI") and determined that, based on an offense level of 29 and a criminal history category of V, Lopez had an applicable guideline range of 140-175 months' imprisonment. The probation officer also noted that the statutory maximum penalty was 40 years' imprisonment.

The probation officer reviewed Lopez's lengthy criminal history, which revealed the following prior convictions. In 1996, Lopez was adjudicated guilty of reckless driving and driving with a suspended license. With respect to that offense, the probation officer explained that Lopez had fled the scene of an automobile accident, but he was subsequently located and interviewed by law enforcement

officers, during which time Lopez admitted that he had been drinking.  In May 1998, Lopez was adjudicated guilty of driving with a suspended license.  In October 1998, Lopez was adjudicated guilty of driving under the influence of alcohol ("DUI") and property damage.  With respect to that offense, the probation officer explained that Lopez was involved in an automobile accident and, when the officer arrived at the scene, Lopez was attempting to flee on foot while the driver of the other vehicle was attempting to restrain him.  In December 1998, Lopez was adjudicated guilty of driving with a suspended license.  In 2000, Lopez was pulled over for a traffic violation and was later adjudicated guilty of driving with a suspended license.  In 2001, Lopez was adjudicated guilty of battery/domestic violence in connection with an altercation with his common law wife.  In 2003, Lopez was adjudicated guilty of driving with a suspended license.  In 2006, Lopez was adjudicated guilty of driving with a suspended license and giving a false name to a law enforcement officer.  In 2008, Lopez was adjudicated guilty of driving with a suspended license and DUI.  With respect to that offense, the probation officer explained that Lopez was pulled over for speeding, and "[a] breath test resulted in readings of .224 and .226."

The probation officer also reported that Lopez explained that he first drank alcohol at the age of 14 and drank "a lot of beer" throughout his adulthood.  Lopez,

who was born in 1972, also informed the probation officer that, from the age of 25 until the time of his arrest, he used cocaine on a daily basis and smoked marijuana occasionally.

At sentencing, defense counsel stated that there were no objections to the PSI, and the district court adopted the PSI's factual findings and guideline calculations. Defense counsel then argued for a downward variance under the § 3553(a) factors based on the fact that Lopez's criminal history category of V was due to his alcohol problem. In this respect, counsel emphasized that all of Lopez's vehicular offenses were non-violent, misdemeanors. After Lopez personally apologized to the court, the court made the following statement:

> Mr. Lopez, your counsel makes an interesting point when he says that you have a status as a Criminal History Category V offender in a manner that is not typical. I think that's right in the sense that seldom do we see somebody who achieves Category V based primarily on a remarkable refusal over a long period of time to comply with the rudimentary laws relating to drunk and irresponsible driving and the acquisition of a driver's license. Of course, having a driver's license is an absolute minimum requirement. Perhaps as far as the other members of the public who are on the highways asking that that driver also be somewhere near sober and even perhaps more to the point many times have insurance so that when he crashes, he doesn't flee – as I think you have at least once – and is able to be responsible for the damage that is caused. I must admit that your persistence in conducting yourself recklessly and irresponsibly on the highways is among the worst I've seen. I think any disinterested person looking at your record would agree with that.

> Secondly, one can look at your personal history and see an

4

unmistakable escalation in your behaviors, no doubt in part as your counsel says owing to this problem you have with [alcohol]. I expect that [this] is why this domestic battery shows up and all that sort of thing. I guess the bottom line is you can spend most of your life sober and get a driver's license and buy some insurance and live like the rest of us, or you can go around from place to place recklessly driving without a license, drunk, and expect to land up in jail, which is what's happened.

Of course, trafficking in methamphetamines is a different animal all together. I must say it's consistent with a pattern of your disregard for the well-being of those who live around you, both in your house and in your neighborhood. When you conduct yourself like that, you cannot expect to retain your liberty or to retain your place in the United States. So, yes, I expect you are going to go to prison, and, yes, I expect you are going to get deported. On reflection it should be clear to you that you almost insisted on both of those by your behavior. You had every chance in the world to do something else and failed to do it.

Citing Booker[1] and 18 U.S.C. § 3553(a), the court then sentenced Lopez to 157 months' imprisonment on both counts, to run concurrently. In imposing this sentence, the court stated that it had considered the advisory Guidelines and the § 3553(a) factors. The court then made the following statement:

I incorporate my comments to the defendant a few minutes ago with respect to his protracted disregard for the welfare of those around him, both in his domestic battery and his public misbehavior on the highways, and as well the escalation of his lawlessness into trafficking into methamphetamines. He stands undeterred by that which has happened to him previously. In general, he's a pestiferous influence in the community. He needs sobriety. I hope he finds that in prison. He has available to him during his imprisonment some opportunities

---

[1] United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

for education and vocational training. He needs as many of those as he can acquire during his confinement. His aggregate criminal history is to say the least unappealing and presents him with a number of realities that he has to confront and overcome or else he simply will resume the predictable criminal path when he regains his liberty.

At any rate I am convinced that both with respect to similarly situated offenders in other cases and with respect to his co-defendants, this sentence creates no unwarranted disparity, if any disparity at all, net of adjustments in the Sentencing Guidelines, and is in all respects reasonable. Comfortably so, I think.

As part of the judgment of conviction, the court recommended that Lopez participate in a 500-hour comprehensive drug control program offered by the Bureau of Prisons ("BOP").

## II.

We review a defendant's sentence for reasonableness under an abuse-of-discretion standard. Gall v. United States, 552 U.S. __, __, 128 S.Ct. 586, 591, 594, 597, 169 L.Ed.2d 445 (2007); United States v. Pugh, 515 F.3d 1179, 1190-91 (11th Cir. 2008). "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both [the] record and the factors in section 3553(a)." United States v. McBride, 511 F.3d 1293, 1297 (11th Cir. 2007) (quotation marks omitted) (alternations in original).

A sentence may be procedurally or substantively unreasonable. United

States v. Hunt, 459 F.3d 1180, 1182 n.3 (11th Cir. 2006).[2] "[W]e will only reverse a procedurally proper sentence if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." McBride, 511 F.3d at 1297-98 (internal quotation marks omitted). The factors in § 3553(a) that the court must consider are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims.

United Stats v. Talley, 431 F.3d 784, 786 (11th Cir. 2005) (citing 18 U.S.C. § 3553(a)). It is sufficient for the district court to acknowledge that it has considered the § 3553(a) factors, but it need not explicitly discuss each of them. United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005).

## III.

---

[2] Lopez briefly asserts that the court committed procedural error by treating the Guidelines as mandatory, but we reject this assertion because the district court explicitly recognized that the Guidelines were advisory only.

In this case, the district court stated that it had considered both the advisory Guidelines and the § 3553(a) factors in arriving at its sentence. Moreover, the court's sentence of 157 months' imprisonment fell within the applicable guideline range, a sentence that is ordinarily expected to be reasonable. Talley, 431 F.3d at 786-88. In addition, the court's sentence was well below the statutory maximum sentence of 40 years' imprisonment, another factor indicating that the court's sentence was reasonable. See United States v. Winingear, 422 F.3d 1241, 1246 (11th Cir. 2005) (holding that the court's sentence was not unreasonable where, inter alia, it was one-tenth the length of the statutory maximum sentence).

Furthermore, the record reveals that the district court "ma[d]e an individualized assessment based on the facts presented." Gall, 552 U.S. __, 128 S.Ct. at 597. In other words, the court's sentence was reasoned. The court correctly emphasized Lopez's remarkable criminal history dating back to 1996, finding his reckless and irresponsible behavior on the highways to be among the worst it had seen. The court also referenced the fact that Lopez was driving without insurance and had attempted to flee from the scene of an accident on at least one occasion; indeed, the PSI indicates that Lopez attempted to do so on two separate occasions. The court further recognized that Lopez's criminal behavior had "escalated" over the years, resulting in his domestic battery offense. In this

8

respect, the court found Lopez's instant conviction for trafficking in methamphetamine to be consistent with this pattern of behavior and with Lopez's general disregard for the welfare of others around him. As a result of this criminal history, the court understandably found that Lopez had been "undeterred by that which has happened to him previously."

On appeal, Lopez contends that the court did not adequately consider the fact that his criminal history category of V was the result of his alcohol addiction. However, the court explicitly recognized that Lopez had an alcohol problem, expressing its hope that Lopez would find the sobriety he needed in prison. The court also adopted the factual findings in the PSI, including Lopez's admission that he had drank heavily since the age of 14, used cocaine on a daily basis since the age of 25, and used marijuana occasionally since the age of 25. The court also recommended that Lopez be enrolled in a comprehensive drug program, thus providing Lopez with "medical care" and "correctional treatment." 18 U.S.C. § 3553(a)(2)(D). But more importantly, Lopez's alcohol addiction did not cut in his favor. He had been convicted of driving with a suspended license on seven separate occasions. Significantly, he had admittedly been drinking during the 1996 offense and was subsequently convicted of DUI in 1998 and 2008. Thus, Lopez's criminal history demonstrated that his addictive behavior, coupled with his

propensity for getting behind the wheel – despite not having a license or insurance – continued to pose a grave danger to other innocent drivers on the road.

Finally, Lopez asserts that the court failed to consider an alleged sentencing disparity between deportable aliens, such as himself, and U.S. citizens convicted of the same offense. However, as the government points out, there is nothing in the record to support Lopez's argument, as he did not raise it below and has not requested to supplement the record on appeal. As a result, he has not shown that court abused its discretion by failing to consider this alleged sentencing disparity. Accordingly, we affirm.

**AFFIRMED.**